STATE EX REL. SCHOOL DISTRICT No. 8, TOWN OF WAUWA-
     TOSA, Respondent, vs. CARY, State Superintendent, Appellant.

*May 17—June 28, 1917.*

*Schools and school districts: Inspection of buildings: Condemnation: Refusal of district to replace building: Forfeiture of apportionment: Powers of state superintendent: Appeals: Oral testimony and arguments: Due process of law.*

1. Sub. 3, sec. 517, Stats., authorizes a state inspector of public school buildings to make an order directing school officials to repair and improve any school building found by him to be unsanitary or unsafe, but gives him no power to condemn the building and order the erection of a new one in its place. In case he shall deem the old building unfit for school purposes and not worth repairing, he is merely directed to state that fact and recite his reasons.

2. A school district does not forfeit its apportionment of the fund derived from the seven-tenths mill tax (provided for in sec. 1072a, Stats.) because of a refusal to comply with an order of the state inspector of school buildings unless such order was made under statutory authority; and no discretion or power is vested in the state superintendent to withhold the seven-tenths mill tax from a school district which refuses to heed his recommendation that a new schoolhouse be erected to replace one which the inspector has found unfit for school purposes and not worth repairing.

3. Rules adopted by the state superintendent, regulating appeals to him, under which oral arguments and the taking of oral testimony are not allowed, are a legitimate exercise of the authority vested in him; and where the parties interested in an appeal

from an order of an inspector requiring the erection of a new schoolhouse in place of an old one were given an opportunity to present all the facts and make all the suggestions they deemed necessary by affidavits and in writing, the refusal to allow them to present oral testimony and make oral arguments did not infringe any property rights.

APPEAL from a judgment of the circuit court for Milwaukee county: W. J. TURNER, Circuit Judge. *Affirmed.*

The superintendent of schools for Milwaukee county applied to *C. P. Cary,* state superintendent of schools, to have an inspection made of the Thirty-sixth street and State street schools of district No. 8 in the town of Wauwatosa, Milwaukee county, with a view of having both buildings condemned. An inspector was directed by *Mr. Cary* to view the buildings and make report. Such inspection was made and on January 31, 1916, the inspector gave to the clerk of the school district a written notice embodying his conclusions as to the conditions he found. As to the State street school, that it is unsatisfactory in several particulars, and then as follows:

"Thirty-sixth street school: This is a very old building; the floors are warped; it has six school rooms occupied; the three hot-air heating and ventilating systems are inadequate in that the cold-air intakes are not large enough and that the hot-air intakes and outlets for the rooms are not placed properly and in some instances are not large enough; every room is without satisfactory blackboards; the seating is very poor, one teacher reporting that about one half of the pupils' feet could not rest on the floor, due to the height of the seats from the floor; the age and general condition of this building is such that in my judgment no attempt should be made to remodel it. I am of the opinion that there is great danger from fire in this building.

"The need of a modern schoolhouse large enough to accommodate all pupils now enrolled in these two buildings and to provide for the future growth of the district is evident. The records show that your district has an assessed valuation of approximately five millions of dollars, with a

28]          JANUARY TERM, 1917.          105

State ex rel. School Dist. No. 8 v. Cary, 166 Wis. 103.

very low tax levy for school purposes, due to the large amount of state and county money it receives annually.

"I therefore direct that the use of said buildings as schoolhouses be discontinued after December 1, 1916, and that a satisfactory new building be erected, fully equipped and ready for occupancy on or before said date, December 1, 1916, the equipment to consist of an adequate heating and ventilating system with provisions for maintaining the proper humidity of the school room air, at least 100 square feet of the No. 1 slate board for each room, single steel adjustable desks and chairs for all pupils enrolled, and adjustable shades of a tan color for all east, south, and west windows.

"This action is taken in accordance with chapter 30, Laws of 1913, which decrees that in case of failure on the part of the electors to comply with these directions, the district's share of the seven tenths of a mill tax provided for in section 1072a of the statutes and amendments thereto, is absolutely forfeited and must be withheld for the school year 1915–16 and every year thereafter until these conditions have been complied with."

An appeal was taken by the school district to the state superintendent, who visited the schools in question and by his order upheld the condemnation of the Thirty-sixth street school building, but extended the time for the erection of the new building in its place for one year longer than that fixed by the inspector's order, that is until December 1, 1917. By the same order or determination he decided as to the other school as follows:

"With respect to the State street school I would say that with the exception of poor ventilation, which I think can easily be adjusted, and greater provisions against fire in the basement, the building is satisfactory and the order of condemnation is not sustained. The chief ground on which the condemnation of this building was based is its location in the vicinity of a manufacturing plant from which smoke and fumes issue constantly and which at times are carried over and into this building in a manner to distress the occupants. I do not hold that this department is competent under our laws to condemn a building for such a reason.

Whether the fumes in question are injurious to health is a matter for the consideration of the health department and not for the department of education. The teachers in the building have kept a record for some time past and find that about once a week these odors and fumes are distressing, sometimes extremely so. The physical condition of this building is subject to examination and inspection by the state industrial commission. It would seem that with their suggestions the defects in the matter of ventilation, etc., in the State street school may be remedied. If this is properly attended to and provision made against fire, the changes will be satisfactory to this department. These changes should be installed by the opening of school next fall."

While the appeal was pending before the state superintendent the district asked to have a hearing before him at which oral testimony might be taken. Such request was denied. The school district then obtained a writ of *certiorari* from the circuit court for Milwaukee county directed to the state superintendent. Upon trial judgment was entered vacating such decision of the state superintendent, from which judgment he has appealed to this court.

For the appellant there was a brief by the *Attorney General* and *J. E. Messerschmidt,* assistant attorney general, and oral argument by *Mr. Messerschmidt.*

*Gilbert J. Davelaar* of Milwaukee, for the respondent.

ESCHWEILER, J. The defendant, state superintendent of schools, on this appeal contends for two propositions, viz.: first, that he has the power under the statutes hereinafter cited to condemn and order discontinuance of the use of a schoolhouse such as he held the Thirty-sixth street school to be; and second, that he is authorized to withhold the seven-tenths mill tax from this school district so long as it does not comply with his order to build a new schoolhouse in place of the one so condemned.

Sec. 517, Stats., entitled "Inspection of school buildings," provides for inspectors of public school buildings who shall

act under the directions of the state superintendent and under regulations established by him; that whenever complaint is made that any public school is in an unsanitary condition or that the conditions are such as to endanger the life and health of the children attending the schools, or that the schoolhouse is unfit for school purposes, one of such inspectors designated by the said superintendent shall personally investigate and examine the premises and buildings. The following paragraphs are parts of the same statute:

"3. Upon such investigation and examination said inspector shall, if conditions warrant it, make an order directing the school board, the board of education, or other officer or officers having control of the school district or school corporation, to repair and improve such building or buildings as may be necessary, and to place said buildings in a safe and sanitary condition; or if said inspector shall deem the schoolhouse unfit for school purposes and not worth repairing he shall state said fact and recite the reason therefor.

"4. The said inspector shall file said order in the state superintendent's office, and cause true copies thereof to be delivered, by mail or otherwise, to the clerk of the district board, . . .

"5. The said order shall state the time in which it shall be complied with, and shall take effect from its date, and shall continue in force and full effect until reversed. The decision of the inspector may be appealed from to the state superintendent in the time and manner now provided for taking appeals to said superintendent, and the decision appealed from shall be stayed, pending such appeal.

"6. Whenever any school district . . . shall refuse to comply with the order of said inspector within the time herein specified, such school district . . . shall forfeit absolutely its apportionment of the fund derived from the seven-tenths mill tax, provided for in section 1072a of the statutes, and amendments thereto, and shall continue to so forfeit its regular apportionment of such fund until there is full compliance with the requirements of said order, unless the electors of said school district shall vote to instruct the school board to close the district school and provide transportation and tuition for all children of school age in the district de-

siring to attend school at some neighboring school or schools, as provided for in section 496*q* of the statutes.

"7. Nothing in this section shall be deemed to interfere with the operation of the provision of subsection (3) of section 461 of the statutes, relating to the duties of county superintendents of schools, or with the provisions of section 1418*b* of the statutes, relating to the inspection and regulation of the sanitary conditions of schoolhouses by boards of health."

The substantial point at issue between the parties in this case arises from the construction that should be given to sub. 3, above quoted. An examination of its language alone and in connection with the surrounding sections leads us to the conclusion that it provides for two separate and distinct determinations that may be arrived at after such inspection. In the first division of that paragraph preceding the semicolon there is found a provision for the making of an order, the conditions warranting the same first having been found, which order directs the repairing and improving of existing school buildings. By the last portion of that same subsection following the semicolon there is no provision for the giving of any order, and the power there given goes no further than to provide for the reciting of the fact, when so found, that the building is unfit for school purposes and the reason therefor.

Evidently it is the order that is specified in the first portion of sub. 3 that is referred to in the subsequent subsections of sec. 517 providing for its filing and its enforcement, and it is such order, and such order only, that is followed by the penalty of the withholding of the seven-tenths mill tax in cases where compliance with such order is refused by the school board as provided in sub. 6 above.

By sec. 430, Stats., the power of building schoolhouses is vested in the inhabitants of the respective school districts. Such inhabitants at their regular meetings have the power to designate a site for a school building and to vote such tax as

shall be deemed sufficient to purchase or lease such site and
to build, hire, or purchase a schoolhouse and keep it in re-
pair.     The original power, therefore, of purchasing and leas-
ing the site and the building, hiring, or purchasing of school-
houses is thereby vested in such inhabitants, and we must
refuse to construe sec. 517 in a manner that would be in der-
ogation of the powers of the inhabitants of the school dis-
trict unless there be found, in clear terms, the intention of
the legislature that what has been given to these inhabitants
of the school district by sec. 430 is intended to be in effect
taken away from them and vested in the state superintendent.

It is further urged on behalf of defendant that although
he may not have the power to compel the building of a new
schoolhouse, yet that it still may be a proper exercise of the
discretion vested in him by sec. 1072$b$, Stats., to withhold
the seven-tenths mill tax from a school district that will not
heed his recommendation that such new building should re-
place the old, if it should be held that he can only recommend
and not order.     This, however, would be permitting to be
done by indirection what could not be done directly.     The
only orders, therefore, noncompliance with which can be
visited with the penalty of withholding the seven-tenths mill
tax, are such lawful orders as the state superintendent may
make under the authority of the statute.     If warrant for the
making of the order cannot be found in the statute, then he
has no discretion or power to punish for any violation of any
such attempted proceeding.

However much we may be impressed with the argument
that the legislature, by the enactments found in sec. 517,
must have wanted to clothe the state superintendent not
merely with the power to require substantial modifications
and changes in existing buildings to meet ever-increasing de-
mands for sanitation and safety, but also with the wider and
greater powers of determining the need for, and then order-
ing, with the same ends in view, the building of a new struc-

ture to replace the old, yet we cannot expand the language of a statute which clearly gives and grants the lesser into an expression, by judicial construction, of the grant of the greater power.

The trial court was therefore right in the construction placed upon this statute.

The respondent contends that the order of the state superintendent which denied him an opportunity to present oral testimony and make oral arguments before him upon such an appeal as was taken by the school district in this case was an unwarranted denial of a substantial right; and that it in effect deprives it of property rights without due process of law.

Although now not necessary in the determination of the case, yet we are warranted in saying that the rules here in question are practically the same as those that were before this court and approved of as a legitimate exercise of the power and authority vested in him as an administrative officer in the case of *State ex rel. Moreland v. Whitford,* 54 Wis. 150, 11 N. W. 424. We think the present situation is within the rule laid down in that case, and that where there was opportunity given to the parties interested in such an appeal as herein to present all the facts and make all the suggestions they deemed necessary by affidavits and in writing, there was no infringement of any property rights.

*By the Court.*—Judgment of the circuit court is affirmed.